**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Think Green Limited d/b/a Haakaa,<br><br>Plaintiff,<br>v.<br><br>Medela AG and Medela LLC,<br><br>Defendants. | **CASE No. 1:21-CV-05445**<br><br>**Hon. Thomas M. Durkin**<br><br>**Mag. Judge Heather K. McShain** |

**THINK GREEN'S DAUBERT MOTION TO STRIKE THE EXPERT REPORT OF MEDELA'S EXPERT DR. CYNTHIA COHEN**

## I. INTRODUCTION

Medela's so-called "independent expert," Dr. Cynthia Cohen, offers such services under a company named "Verdict Success." But this motion is not directed to her supposed independence, but rather to her lack of qualification and failure to use reliable methodology in her opinion on trade dress likelihood of confusion.

Dr. Cohen's report fails each prong of the Rule 702-Daubert analysis, which requires an expert to (1) be qualified, (2) use reliable methodology, and (3) offer opinions that are relevant. Dr. Cohen is wholly unqualified to render an expert opinion in this case because she has no expertise in marketing or trade dress likelihood of confusion. Dr. Cohen also used unreliable methodology in conducting her breast pump survey, which artificially suppressed confusion by testing the wrong condition and failing to replicate marketplace conditions. These flaws permeate all of her analysis and render her report unreliable and irrelevant to the trier of fact, and the survey inadmissible.

Therefore, this Court should strike the expert report of Dr. Cohen in its entirety. Think Green brings this motion now to assist the Court in evaluating a pending summary judgment motion.

## II. ARGUMENT

Surveys can be extremely helpful to the jury in Lanham Act cases, but they can also be dangerously misleading. Admissibility hinges on Fed. R. Evid. 703, *i.e.*, that real experts in a field might use surveys to make business decisions. But surveys become unhinged from reality when designed or interpreted by those with no experience in an underlying field. Here, Dr. Cohen has no underlying experience or training in marketing. And she tested a condition having nothing to do with consumer perception and cognition of product configuration trade dress. Whether a survey subject can scroll up and read some text is not germane to whether a shape initially confused her about source, sponsorship, or affiliation.

### A. This Court should strike Dr. Cohen's report because it fails each prong of the Rule 702-*Daubert* analysis.

Medela's proffered survey expert, Dr. Cynthia Cohen, is simply unqualified to render an opinion on trade dress likelihood of confusion and uses unreliable survey methodology in her report. The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673-74 (7th Cir. 2017). Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert*, Courts should interpret Rule 702 "with a flexible standard" having two over-arching requirements: (1) "[t]he expert testimony must be 'ground[ed] in the methods and procedures of science,'" and (2) the expert testimony "must 'assist the trier of fact to understand or determine a fact in issue.'" *Krik*, 870 F.3d at 674, citing *Daubert*, 509 U.S. at 590-91. District courts have broad discretion in acting "as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Krik*, 870 F.3d at 674, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In the Seventh Circuit, an expert's testimony satisfies Rule 702 and *Daubert* if:

> (1) the expert is qualified;
> (2) the expert's methodology is scientifically reliable, and
> (3) the expert's testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."

*Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010), citing *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007); *see also Ruby Reed v. City of Chi.*, No. 01 C 7865, 2006 U.S. Dist. LEXIS 39962, at *6-7 (N.D. Ill. June 1, 2006) (hereinafter *Ruby Reed*), citing *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). Dr. Cohen's report fails each prong of the Rule 702-*Daubert* analysis, so her report should be struck. Her underlying survey is also inadmissible.

**1. Dr. Cohen is unqualified because she has essentially no experience relevant to trade dress likelihood of confusion.**

Under the first prong of the Rule 702-*Daubert* analysis, courts must determine whether an expert is qualified. *Myers 6*29 F.3d at 644. Courts consider an expert's "full range of practical experience as well as academic or technical training." *Ruby Reed* at *7, citing *U.S. v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). The area in which the expert has superior knowledge, skill, experience, or education, must match the subject matter of the expert's testimony. *Ruby Reed* at *15, citing *Carroll v. Otis Elevator Co*., 896 F.2d 210, 212 (7th Cir.1990).

"Trade dress is the total image or overall appearance of a product, including size, shape, color, texture, and graphics." *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002) (citations omitted). Likelihood of confusion in the trade dress context concerns whether consumers would be confused as to the source, sponsorship, or affiliation of a product because of its trade dress. *Id.*, citing *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d at 296. Designing and interpreting a trade dress likelihood of confusion survey requires foundational marketing skills to understand consumer behavior and replicate marketplace conditions. *See* SHARI S. DIAMOND & JERRE B. SWANN, TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS, Ch. 2 The Use of Pilot Tests and Pretests in Consumer Surveys – The Expert and the Attorney: Different Perspectives on the Value of Pilot Tests (2d ed. eBook 2022) ("The expert [conducting a Lanham Act-related survey] has been trained in perception, attitudes, cognition, marketing research, quantitative techniques, and so on. . ."), included herewith as Exhibit A.

In *Ruby Reed*, this Court struck the report of an expert with a background in general and textile manufacturing, retail strategy, textile applications, product development, and international textile markets, and whom the opposing party openly admitted was well versed in many areas of textiles and manufacturing. In the expert's report, the expert opined on consumer protection issues that were minimally related to the expert's experience. This Court found that the expert lacked specific expertise in consumer protection — the expert's general experience in the industry was insufficient — and struck the expert's report.

Two Fourth Circuit cases (one from the district court, the other from the appeals court) applied this principle to survey experts in trademark and trade dress cases, reaching opposite results. In *Radiance Found., Inc. v. NAACP*, the Eastern District of Virginia court struck portions of a survey expert's testimony on trademark dilution and likelihood of confusion. 27 F. Supp. 3d

671, 675 (E.D. Va. 2013). Significantly, the court held that "general expertise in the area of surveys and marketing is not sufficiently specialized" for an expert to reliably opine on likelihood of confusion. *Id.* The expert failed to use reliable methodology particularized for trademark litigation, instead basing her conclusions largely on her own experience. The court contrasted its decision with *Belk, Inc. v. Meyer Corp.*, where the Fourth Circuit court affirmed a district court's decision that an expert was qualified to opine on trade dress infringement even though the expert had not previously conducted trade dress or trademark surveys. *Id.* at 676. Despite this lack of specific trade dress experience, the court credited the expert with having "been qualified as an expert witness in consumer behavior and marketing" in about 20 cases throughout his career. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 162 (4th Cir. 2012). In addition, the court credited that much of the expert's previous consulting projects included creating, designing, and evaluating consumer surveys and interpreting consumer research. *Id.*

Dr. Cohen is no doubt an accomplished individual. Her curriculum vitae, included herewith as Exhibit B, spans four pages listing her various accomplishments. These include retention as a survey expert in a number of cases since 2014, working as a trial consultant with her "Verdict Success" company since 1986, completing a bachelor's degree in Psychology, a master's degree in Counseling Psychology, and a doctoral degree in Educational Psychology, as well as a number of professional affiliations, awards, speaking engagements, and publications.

Dr. Cohen may be an expert in Educational Psychology, community attitude surveys, gender surveys, and attorney perception surveys, and being a trial consultant to help lawyers pick juries. But Dr. Cohen is certainly not an expert on the particular issue relevant in this case of trade dress likelihood of confusion because she has no relevant training, education, or experience.

Specifically, she does not have any experience in the underlying field of marketing that is essential for a likelihood of confusion analysis. Dr. Cohen admitted as much in her deposition:

> Q. Well, let me be more clear. In all of your work experience, have you ever been a person responsible for marketing a consumer product?
>
> A. [. . .] [N]ot that I recall.

Cohen Deposition Transcript of June 15, 2022, Exhibit C, at 27:25-28:4.

Although Dr. Cohen claims on her curriculum vitae to have been admitted in court as a survey expert through her prior expert engagements, merely performing work on cases that do not go to trial and relying on client or attorney assurances as to admissibility do not constitute being qualified in court by a trial judge as an expert.

> Q. [. . .] Were you ever present in a courtroom when a court ruled in favor of the admissibility of any of your survey evidence?
> A. As I said earlier, I was not.

*Id.* at 114:4-7. Her testimony of having been so qualified is clearly mistaken, as in each case she could only vaguely recall a client or an attorney telling her that her testimony was admitted, without ever having been present for a court to rule on her qualifications. *E.g.*, *Id.* at 35:24-37:3, 38:10-16, 42:15-24. Think Green's counsel inspected the dockets in each of Dr. Cohen's cases, and did not locate any order qualifying her to testify as a likelihood of confusion or confusion survey-design expert. Rather, Dr. Cohen had never been qualified by any court as an expert before serving as Medela's survey expert in this case for the preliminary injunction hearing, where Think Green only learned of her existence a single business day before the hearing and did not have a reasonable chance to critique her qualifications.[1] Moreover, until just before this case began in

[1] Medela sent Dr. Cohen's expert report to Think Green on Friday, December 3, 2022, a single business day before the preliminary injunction hearing on Monday, December 6, 2022. The Court provisionally qualified her at the hearing, with a caution that the decision was subject to future challenge based on elicited facts. Transcript of Preliminary Injunction Hearing, Exhibit G, at 427:22-428:2.

2021, Dr. Cohen had not even conducted a single trade dress likelihood of confusion survey. *See Id.* at 53-54.

Dr. Cohen simply does not have the expertise of a person qualified to opine on issues of trade dress likelihood of confusion. Dr. Cohen's complete lack of marketing experience and having only ever designed one trade dress likelihood of confusion survey just before the present case inherently means she lacks a sufficient background for designing or interpreting a trade dress likelihood of confusion survey. Unlike the expert admitted to opine on trade dress likelihood of confusion in *Belk*, Dr. Cohen has no specific marketing or consumer behavior experience and, until now, had never been admitted as an expert in court. *See also JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 323 (D. Md. 2017) (striking the report of an expert opining on likelihood of confusion, even where the expert had a general background in marketing, finding that this general marketing experience was not specific enough).

Thus, because Dr. Cohen lacks specific expertise in marketing and trade dress likelihood of confusion, this Court should find that she is unqualified under the first prong of the Rule 702-*Daubert* analysis.

**2. Dr. Cohen used unreliable survey methodology.**

Perhaps due to her lack of qualification in marketing, consumer behavior, and trade dress likelihood of confusion, Dr. Cohen botched her survey design. This explains why she found literally zero likelihood of point of sale confusion on the Amazon platform over products with trade dresses so similar this court initially entered a temporary restraining order. Zero likelihood of confusion (actually, *negative*, as reported) cannot pass the straight face test. Cohen Expert Report, Exhibit D, at 13.

This violates the second prong of the Rule 702-*Daubert* analysis because the expert's conclusions must be based on reliable methodology. *Myers* 29 F.3d at 644. Merely "boasting years

of education and experience" and "talking off the cuff" is insufficient methodology. *Ruby Reed* at *7, citing *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). *See also Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590) (quotations omitted) ("Expert testimony rooted in subjective belief or unsupported speculation does not suffice"). Although a survey is rarely inadmissible, with "any shortcomings in the survey results go[ing] to the proper weight of the survey," such situations do exist when a "survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993), citing *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 394 (7th Cir. 1992).

The major flaw in Dr. Cohen's methodology was to allow survey respondents to scroll up on their screens to carefully review the single stimulus simultaneously as the survey asks them the critical likelihood of confusion questions of, "If you have an opinion, what company or organization makes or puts out this breast milk collector?" and "If you have an opinion, do you believe that this breast milk collector is affiliated with or sponsored by any other company?" Cohen Deposition Transcript of June 15, 2022, Exhibit C, at 117:11-119:13, referencing Cohen Expert Report, Exhibit D, at 9. This procedure significantly departs from typical marketplace conditions encountered by consumers when buying a breast pump on the internet. It is not realistic for consumers to be metaphorically tapped on the shoulder to be asked a question while being given the opportunity to study, read, and analyze a product listing to search for an answer to that question. A marketing expert would know that shoppers typically make up their mind about a product in a matter of seconds.[2]

---

[2] According to Procter & Gamble, shoppers make up their mind about a product in "the three to seven seconds when someone notices an item on a store shelf." Emily Nelson & Sarah Ellison, *In a Shift, Marketers Beef Up Ad*

Dr. Cohen admitted that she used this flawed methodology because she thought it matched "the nature of the shopping experience," an opinion she is entirely unqualified to make, having no marketing or consumer behavior experience. *Id.* at 117:11-20. A correct methodology for an Eveready-style trade dress survey removes the stimulus during the question. Otherwise, the survey tests not for short term cognition effects after viewing a product trade dress (*i.e.*, confusion), but ability to be helpful by reading textual brand identifiers.

Asking a survey respondent a question as to source, sponsorship, and affiliation of the single accused product while simultaneously allowing them to study the text in the product listing improperly creates demand effects in a trade dress likelihood of confusion survey. "Demand effects . . . are produced when respondents use cues provided by the survey procedures and questions to figure out the purpose of the survey and to identify the 'correct' answers to the questions they asked." Itamar Simonson, & Ran Kivetz, *Demand Effects in Likelihood of Confusion Surveys: The Importance of Marketplace Conditions*, 243, in SHARI S. DIAMOND & JERRE B. SWANN, TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS (1st ed. 2012), Exhibit E. Proper survey design minimizes the impact of demand effects. *Id.* Perhaps Dr. Cohen conflated trademark survey design, since with trademark surveys, the textual branding itself is often the stimulus. *See* SHARI S. DIAMOND & JERRE B. SWANN, TRADEMARK AND DECEPTIVE ADVERTISING SURVEYS, Ch. 14 – The *Daubert* Revolution and Lanham Act Surveys – Presenting the Stimulus and Replicating Market Conditions (2d ed. eBook 2022).

Dr. Cohen's flawed methodology created demand effects which artificially countered confusion by placing an undue focus on the branding included with a product listing, allowing

*Spending Inside* Stores, THE WALL STREET JOURNAL (Sept. 21, 2005). *See also*, Don Hootstein, *Standing Out in the Aisles,* MARKETING AT RETAIL, 22-24 (Jun. 2007), as quoted in THOMAS C. O'GUINN ET AL., ADVERTISING AND INTEGRATED BRAND PROMOTION, 322 (2015 ed.), Exhibit J (describing "packaging as 'the last five seconds of marketing'").

consumers to study the ancillary, textual branding *after* being asked a question that would lead them to unnaturally focus on the textual branding. *See Kargo Glob., Inc. v. Advance Magazine Publrs., Inc.*, 2007 U.S. Dist. LEXIS 57320 (S.D.N.Y. Aug. 6, 2007), citing *Conopco, Inc. v. Cosmair*, 49 F. Supp. 2d 242, 253 (S.D.N.Y. 1999) ("A survey that uses stimuli that differ from what a consumer is actually likely to see in the marketplace does not accurately test for actual consumer confusion and thus lacks probative value"). This explains the absurdly low, and even negative, amount of confusion that her survey manufactured. Cohen Expert Report, Exhibit D, at 13.[3]

By contrast, Think Green's expert Rhonda Harper, who has extensive marketing and consumer behavior experience,[4] used a reliable methodology of showing consumers the product listing, removing the listing from view, and then asking the consumers questions about whether they formed an opinion as to the source, association, or sponsorship of the product. *See* Harper Point of Sale Likelihood of Confusion Expert Report, Exhibit I, at 22-25.[5]

---

[3] In Dr. Cohen's survey, respondents unambiguously confirmed that they simply read text to give a "correct" answer. When asked open-endedly to explain why they answered as they did, a great majority gave responses saying so, *e.g.*, "From the print I read," "Because it says in the web description that I read," and "It's from brand Medela as per the product description given above." Target Group Raw Responses, Appendix B to Cohen Expert Report, Exhibit K. With such misguided survey design, it speaks to how strong Haakaa's trade dress really is, that despite such demand effects, three respondents *still* indicated Haakaa as the source of the accused product.

[4] Ms. Harper's extensive marketing expertise includes providing litigation consulting and expert witness services since 2005 on cases involving the Lanham Act, trademarks, trade dress, patents, defamation, commercial reasonableness, licensing, retail merchandising, misleading advertising, likelihood of confusion, genericness, and secondary meaning. She also served in high-level marketing positions for a number of companies, which includes experience as the lead of the global marketing communications team at UPS, the Vice President of Marketing for Sam's Club and the top marketing officer for Walmart, the Vice President of Marketing for Vanity Fair Intimates, and the Promotional Marketing Director for Nabisco Biscuit, among many other relevant positions and experience. *See* Harper Curriculum Vitae, Exhibit F.

[5] Though not directly relevant here, Ms. Harper found net post sale confusion of 28%, Harper Post Sale Likelihood of Confusion Expert Report, Exhibit H, at ¶ 91, and net point of sale confusion of 12.5%. Harper Point of Sale Likelihood of Confusion Expert Report, Exhibit I, at ¶ 85. Each result is well over judicially recognized thresholds to support a jury verdict. *E.g.*, *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, No. 19-cv-3299 (JSR), 2021 U.S. Dist. LEXIS 220765, at *43 (S.D.N.Y. Nov. 16, 2021) ("A confusion rate less than 10% indicates a lack of confusion based on generally accepted survey techniques and recognized by courts").

Dr. Cohen's flawed methodology is likely due to her complete lack of marketing experience. Her statements claiming that her survey appropriately replicated marketplace conditions are nothing more than "talking off the cuff" statements that courts have held are inadmissible, as Dr. Cohen, by her own admission, has never marketed a consumer product. *See Ruby Reed* at *7. Likewise, any likelihood of confusion analysis based on this flawed survey is unreliable because it lacks a proper scientific foundation, making this one of the rare situations where a survey is so flawed it should be inadmissible. Thus, this Court should strike Dr. Cohen's report and its survey because she used flawed and unreliable survey methodology.

**3. Dr. Cohen's report will not assist the trier of fact because of her lack of qualification and unreliable methodology.**

Under the third prong of the Rule 702-Daubert analysis, an expert report must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers*, 629 F.3d at 644, citing *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d at 904. However, because Dr. Cohen is unqualified to provide expert testimony on trade dress likelihood of confusion and because she used unreliable survey methodology in her report, Dr. Cohen's report is not in any way helpful for the trier of fact to understand the evidence or to determine a fact in issue in this case. *See Radiance Found*, 27 F. Supp. 3d at 676 (holding a report from an unqualified expert with a flawed methodology would not be helpful to the court). Accordingly, this Court should also strike Dr. Cohen's report because it would be unhelpful to the Court.

## III. CONCLUSION

This Court should strike Dr. Cohen's report because it fails each prong of the Rule 702-Daubert analysis. Dr. Cohen is unqualified to design and interpret a trade dress likelihood of confusion survey because she has no expertise in marketing or consumer behavior. Furthermore, Dr. Cohen used unreliable methodology in conducting her survey, which improperly suppressed

confusion by testing for the wrong condition (textual reading under the sway of a demand effect, rather than shape cognition), thereby failing to replicate marketplace conditions. These flaws render the report unreliable, and therefore, irrelevant to the trier of fact. For all these reasons, Think Green respectfully requests that this Court strike the expert report of Medela's expert, Dr. Cynthia Cohen, and its underlying survey.

Dated: June 30, 2022

Respectfully submitted,

*/s/Robert P. Greenspoon*

Dunlap Bennett & Ludwig PLLC
Robert P. Greenspoon
Michael R. La Porte
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
T: 312-551-9500
F: 312-551-9501

Thomas Dunlap (*pro hac vice*)
211 Church St. SE
Leesburg, VA 20175
T: 703-777-3656
F: 703-777-7319

*Attorneys for Plaintiff,*
*Think Green Limited d/b/a Haakaa*