**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Think Green Limited d/b/a Haakaa,<br><br>Plaintiff,<br>v.<br><br>Medela AG and Medela LLC,<br><br>Defendants. | **CASE No. 1:21-CV-05445**<br><br>**Hon. Thomas M. Durkin**<br><br>**Mag. Judge Heather K. McShain** |

# MOTION TO EXCLUDE CERTAIN OPINIONS OF ALAN BALL

The world's largest breast pump maker could not locate a breast pump designer to advance its litigation positions as an expert. Mr. Alan Ball admitted he has never designed a breast pump. But this is a *design* patent case and Medela presents Mr. Ball solely as a *design* expert for breast pumps on *design* patent issues. Federal Circuit authority, like authority from multiple trial courts, holds that expert testimony from Mr. Ball on design patent claim construction, infringement, and validity is inadmissible. This Court should strike and disregard his declaration/report.

Think Green files this motion aware that the Court found Mr. Ball's testimony credible at the December 2021 preliminary injunction hearing. At that time, Mr. Ball had not been deposed. Medela had served his report a mere single business day before that hearing began. But since the preliminary injunction proceedings, Think Green has explored his qualifications at deposition. Answers were troubling. Deposition admissions reveal that Mr. Ball's personal opinions about breast pump design are purely speculative and not based on a proper grounding in recognized minimum expert qualifications under the Federal Rules of Evidence.

It is now apparent why, to Mr. Ball, small, trivial differences among the patented and accused designs, gleaned through inspection of the accused product at a level of scrutiny far more searching than any "ordinary observer" would perform at purchase, somehow led to junk

"noninfringement" opinions. It is no wonder that Medela could not marshal a true expert—the patented versus accused designs are so similar that the Court initially entered a TRO against Medela. Medela's *ipse dixit* unqualified testimony from Mr. Ball should be excluded for all purposes, including the Court's upcoming consideration of Medela's motion for summary judgment.

## BACKGROUND[1]

In opposition to Plaintiff Think Green's motion for preliminary injunction and again in support of its motion for summary judgment, Medela relies in part on the opinions of designer Alan Ball. For summary judgment purposes, Mr. Ball's opinions are related to two areas:

1. Claim Construction regarding the areas of (a) opacity and (b) functionality; and
2. Non-infringement based on the perceptions of the "ordinary observer."

*See generally* Feb. 16, 2022, Declaration of Alan Ball In Support of Defendants' Motion for Summary Judgment ("Ball Decl.", ECF No. 114-1). Think Green seeks to exclude these opinions on several grounds.

Mr. Ball has years of general experience as an industrial designer. He is the named inventor on a number of design patents for consumer products. Many of his designs are for small kitchen appliances, including stand mixers, slow cookers, toaster ovens, frozen food makers, coffee urns, *etc.* He also has design patents on computer products and computer accessories. *See generally* Curriculum Vitae of Alan D. Ball, Exhibit 1 to Ball Report (ECF No. 76) at 4-5. Although his report states that he has designed "medical devices," it appears this experience is limited to the design of a mouthpiece and related parts. *Id.* He has no patents on breast pumps or any related

[1] Think Green here sets forth only the background relevant to this issue as the Court is familiar with the merits issues in this case.

products or devices, *id.*, nor has he ever designed a breast pump or breast milk collector. *See* Ball Dep. at 48:18 to 22, attached as Exhibit A. There is nothing in his CV that shows that he has ever worked for a company that makes manual breast pumps or has ever worked with other designers on a manual breast pump. There is nothing in his CV that indicates any experience or education regarding the customers who would qualify as "ordinary observers" in this case.

Regarding the "ordinary observer" test, Mr. Ball stated:

> the Ordinary Observer is a purchaser of women's health, maternity, and infant care products for use in the home and at work. The Ordinary Observer is most often an expectant mother, a mother of babies in their first year, or their friends and families who may be purchasing baby shower gifts. The purchaser may be influenced by a professional who is familiar with the product, such as a nurse, doula, or lactation consultant.

Ball Decl. ¶ 27. Beyond this statement, Mr. Ball did not further describe the ordinary observer or in any way evaluate the way in which such observers perceive products like those at issue here.

In his deposition, when Mr. Ball was asked how he determined the way in which the ordinary observer – namely, "expectant mothers" "mother[s] of babies in their first year, or their friends and families who may be purchasing baby shower gifts" – perceived the patented design and the accused products, he referred only to himself and his own design experience. *See, e.g.,* May 24, 2022, Deposition of Alan Ball at 146:2 to 17 ("I have 30 years . . . designing products") ("when I design a product for people, I'm constantly concerned with how they are going to perceive [my] designs").

To perform his infringement analysis, Mr. Ball personally compared the accused products with an extensive array of design schematics and giant blowups of the patent drawings in minute detail, as shown in his original expert report:





Expert Report of Alan Ball (Dec. 1, 2021) (ECF No. 76) at ¶ 133 (two of six photos excerpted).

Mr. Ball did not perform any empirical investigation to determine whether aspects of the patented design would be important to the ordinary observer. *Id.*at 147:1 to 8 ("Did you perform any empirical investigation about whether that opacity versus transparency difference is substantial to an ordinary observer?"). There is no indication in Mr. Ball's report, deposition, or otherwise that he ever spoke with, interviewed, or otherwise learned how an ordinary consumer of these products would perceive the design embodied in the patent in suit or the accused products. *Id.* at 148:14 to 16 (confirming that he did not, among other things, perform a survey); *see also id.* at 148:23 to 149:1 (confirming that he did not analyze consumer psychology). Indeed, he candidly admitted that he performed no "validating methodology" for his conclusions. *Id.* at 147:15 to 18.

Based on his own experience, including his experience of designing kitchen appliances and computer devices, Mr. Ball opined that the patent-in-suit was for an opaque product and that the opacity of the product compared to the "translucency"[2] of the Medela product.

Mr. Ball also opined as to certain aspects of the design that he deemed "functional." Specifically, Mr. Ball opined that "a breast milk collector has some functional aspects . . . [including] a base." Ball. Decl. ¶ 48. He also opined that "[t]he manual breast pump [is] . . . designed to be placed stably upright on a flat surface without tipping and spilling the contents. This involves having a flat surface or a base on the bottom for stability." *Id.* ¶ 49. It follows that having never designed a breast pump, Mr. Ball has never designed any functional or ornamental aspects of a breast pump.

**ARGUMENT**

This Court should strike the portions of Mr. Ball's opinions contained in his declaration in support of Medela's motion for summary judgment for three reasons. First, Mr. Ball is not qualified as an expert in this area to opine on the perceptions of an "ordinary observer" or as to the functionality of manual breast pumps. Second, he has not applied any methodology in assessing the perception of an "ordinary observer" in rendering his infringement opinions. Third, his functionality opinions are contrary to law and thus irrelevant.

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] Mr. Ball continually refers to the Medela product as "transparent." The Medela product, however is not transparent, it is at best translucent.

Under *Daubert*, Courts should interpret Rule 702 "with a flexible standard" having two over-arching requirements: (1) "[t]he expert testimony must be 'ground[ed] in the methods and procedures of science,'" and (2) the expert testimony "must 'assist the trier of fact to understand or determine a fact in issue.'" *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673-74 (7th Cir. 2017) *citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-91 (1993). District courts are the "evidentiary gatekeeper[s], ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Krik*, 870 F.3d at 674, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). For expert opinion to be admissible: (1) the expert must be qualified; (2) the expert must apply a scientifically reliable methodology; and (3) the proffered testimony must "assist the trier of fact with a fact at issue." *In re Broiler Chicken Antitrust Litigation*, No. 16 C 8637, 2022 U.S. Dist. LEXIS 95525, at *64 (N.D. Ill. May 27, 2022) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

## I. MR. BALL IS NOT QUALIFIED AS AN EXPERT ON FUNCTIONALITY NOR THE ISSUE OF WHAT AN ORDINARY OBSERVER OF MANUAL BREAST PUMPS WOULD PERCEIVE.

Mr. Ball's personal opinions about breast pump design are purely speculative, and not based on a proper grounding in recognized minimum expert qualifications under the Federal Rules of Evidence. Rule 702 recognizes expertise gained from "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. the Federal Circuit has explained that "only one of ordinary skill in the art who is qualified as a technical expert under Rule 702 of the Federal Rules of Evidence may offer expert testimony on technical matters." *Byrne v. Wood, Herron & Evans, LLP*, 450 F. App'x 956, 962–63 (Fed. Cir. 2011) (*citing Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008)). Indeed, "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert

in the pertinent art." *Sundance*, 550 F.3d at 1363. As the Federal Circuit has explained, "[a]dmitting testimony from a person . . . with no skill in the pertinent art[] serves only to cause mischief and confuse the factfinder." *Id.* at 1362.

In a product design patent case, some relevant history related to the product type at issue is typically necessary. *See, e.g., Huang v. Marklyn Gp.*, No. 11-cv-01765-REB-BNB, 2014 U.S. Dist. LEXIS 97861, *5 (D. Colo. Jul. 18, 2014); *see also Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015) ("[T]he ordinary observer is not an expert in the claimed design [], but one of ordinary acuteness who is a principal purchaser of the underlying articles with the claimed designs."); *see also Sport Dimension, Inc. v. The Coleman Company, Inc.*, CV 14-00438 BRO (MRWx), 2015 U.S. Dist. LEXIS 192011 (C.D. Cal. Jan. 29, 2015), *aff'd in relevant part, vacated in part and remanded*, 820 F.3d 1316 (Fed. Cir. 2016).

In *Sport Dimension*, the plaintiff sought to exclude the defendant's design expert witness. *Id.* Discussing the proffered expert's prior experience, the court noted that:

> [Plaintiff] does not dispute Mr. Bressler's credentials, nor that he appears to possess substantial experience in the field of industrial design, generally. Similarly, Coleman does not dispute—and Mr. Bressler's deposition testimony makes it quite clear—that Mr. Bressler has no substantive experience in the narrower field of *personal flotation device* design.

*Id.* at *6 (emphasis in original). The court viewed this prior experience against the requirement that the relevant experience and expertise required to testify under Rule 702 was experience in the relevant art. *Id.* at *7. In opposition, Defendant argued that "Mr. Bressler's forty-four years of experience in industrial product design has endowed him with 'extensive expertise relating to how ordinary consumers see, recognize, and understand the industrial design of products.'" *Id.* The court rejected this reasoning and did not permit the proffered expert to testify stating that

"industrial design experience with buoyant devices and the like is not sufficiently related to personal flotation devices to render him qualified as an expert." *Id.* at *17.

In *Huang*, the parties' dispute centered around a patented design for LED lights in automotive applications. *Id.* at *4. To offer opinions regarding infringement and the perception of an "ordinary observer," the plaintiff hired a mechanical engineer with a background in product development as its expert. *Id.* In its motion to exclude this experts' opinions, the Defendant challenged his expertise. *Id.* The court agreed and excluded the purported expert, noting that his "product development experience is limited to areas not at all relevant in this lawsuit." *Id.* In granting the motion based on a lack of expertise, the court stated, "it would constitute error to permit defendant to present, under the imprimatur of a so-called 'expert,' an opinion which the witness is, at best, no more qualified than the members of the jury to make." *Id.*

Just as in *Huang* and *Sport Dimension*, while Mr. Ball has prior design experience, there is nothing related to the areas relevant to this lawsuit – namely, manual breast pumps. Indeed, Mr. Ball has no prior design experience with respect to any type of breast pump or any lactation or maternity-related products at all. Mr. Ball admitted candidly in his deposition that he has never designed a breast pump. *See* Ball Dep. at 48:18 to 19. To the extent that Mr. Ball has any familiarity with products offered in this field, it is based only on documents provided to him by counsel and products at issue in this case. In this sense, he is no more expert in the ornamental appearance of the '006 patent or the accused products than the jurors that will sit on this case.

There are at least two practical problems with Mr. Ball's lack of experience and expertise in this area. First, because he lacks any background experience in designing, marketing, or otherwise being connected to the field of breast pumps (manual or otherwise), he has no basis for his opinions regarding what the "ordinary observer" in this case (here, expectant or new mothers

or friends and family making breast pump purchases for them) perceives in making purchasing decisions. His viewpoint, rather, is that of product designer primarily of small kitchen appliances and other small computers. There is no indication that the "ordinary observers" of design aspects of these products is the same. There is nothing in Mr. Ball's report or declaration that explains this.

Second, Mr. Ball's lack of expertise and experience in this area undercuts his ability to assess true legal "functionality."[3] *See, e.g., Sport Dimension,* 2015 U.S. Dist. LEXIS 192011 at *16. Part of that relevant analysis is the assessment of alternative designs that exist that perform the same function. *Ethicon Endo-Surgery, Inc. v. Covidien*, 796 F.3d 1312 (Fed. Cir. 2015) (Federal Circuit "on the availability of alternative designs as an important—if not dispositive—factor in evaluating the legal functionality of a claimed design"). Mr. Ball's lack of experience in this area undermines his ability to understand and evaluate the existence of alternative designs for the same product, performing the same function, using a different ornamental design. *Sport Dimension*, 2015 U.S. Dist. Lexis 192011 at *16-17. Indeed, in cross examination at the preliminary injunction hearing, Mr. Ball was confronted with an array of alternative designs for suction cups that could be used on manual breast pumps he was wholly unaware of. *See, e.g.,* December 7, 2021, Tr. of Proceedings at 497-98.

As the Supreme Court in *Gorham* noted, "Experts . . . are not the persons to be deceived." *Gorham*, 81 U.S. at 527-528; *see also Huang*, supra at *4 (excluding expert report that "merely lists some 18 asserted differences between the patented design and the accused products without stating what, if any, effect these differences would have on the overall appearance of the two

[3] As noted *infra*, Mr. Ball applies the wrong legal standard for functionality, which is likely in part due to his lack of expertise in the field and incorrect assessment of what other design alternatives exist for manual breast pumps, which perform the same functions.

products to the ordinary observer").[4] Because he lacks expertise in the field of breast pump design, his opinions should be excluded.

## II. MR. BALL'S ORDINARY OBSERVER INFRINGMENT OPINION IS NOT BASED ON ANY METHODOLOGY AT ALL, LET ALONE ONE THAT CAN AND HAS BEEN TESTED.

Mr. Ball's opinions regarding infringement are unreliable and irrelevant. He fails to truly apply the ordinary observer test. As discussed above, Mr. Ball has no expertise as to the ordinary observer of the '006 patent and the accused Medela products. Consequently, it is not surprising that he fails entirely to apply the ordinary observer test to reach his non-infringement conclusion. Such failure, however, requires exclusion of his opinions relating to infringement.

Contrary to settled law, Mr. Ball conducted an unhelpful infringement analysis from his own viewpoint as a designer of many consumer products, none of which are breast pumps of any kind, or any consumer product for which the "ordinary observer" is an expectant or recent mother. In conducting his own analysis, Mr. Ball focuses on minor and imperceptible details of the accused product to contend there is no infringement without any explanation as to how his examination of *minutiae* relates in any way to the "ordinary observer." Tellingly, his treatment of a flared base in the '006 Patent (minimizing its significance) directly conflicts with his treatment of a flared base in a prior athletic shoe case (noting its importance and its non-functional nature due to the variety of design alternatives within the category). S*ee* Ball Dep. at 131:7 to 134:11 (quoting from report in which Mr. Ball opined in a running shoe design case that a flared base performed a "stability" function, but that there could be "thousands" of different designs to perform such a function; *cf.*

---

[4] Anecdotally, Mr. Ball claimed in his deposition that he was "shocked" that the Patent Office had confirmed patentability of the '006 Patent. *See* Ball Dep. at 165:5. It seems implausible that a person with actual expertise in this area would have been "shocked" at the Patent Office's confirmation of patentability.

*Nike, Inc. v. Skechers U.S.A.*, No. LA CV17-08509 JAK (Ex), 2019 U.S. Dist. LEXIS 239086 (C.D. Cal. Mar. 28, 2019).

The Supreme Court established the test for determining infringement of a design patent in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511 (1871) stating:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. The Federal Circuit in *Egyptian Goddess* further explained, the question is "whether an ordinary observer, familiar with the prior art . . . designs, would be deceived into believing the [Defendant's design] is the same as the patented" design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008); *see also Crocs, Inc. v. Int'l Trade Comm.,* 598 F.3d 1294, 1303 (Fed. Cir. 2010).

As noted above, to be admissible, an expert opinion must be reliable. An expert opinion is reliable when it is based on sufficient facts or data, employs a methodology generally deemed reliable in the expert's field, and properly applies such methods to the facts of the case. *See* Fed. R. Evid. 702(b), (c), & (d). Mr. Ball's perspective, by contrast, does not even attempt to divine or explain the perception of the "ordinary observer," but instead simply posits that his vantage point (that of an industrial designer) is that of an ordinary observer. Mr. Ball not only fails to apply any methodology for determining what an ordinary observer would perceive, but affirmatively refused to consider how the ordinary observer might be reacting to design on a cognitive or psychological level. As a result, Mr. Ball's opinions rest not on any methodology that has been used, tested, and validated (and the application of which could be challenged through cross examination) but instead presents merely his *ipse dixit* on the issue. This is improper under *Daubert*, *Gorham*, and *Egyptian Goddess*.

## III. MR. BALL'S OPINIONS REGARDING FUNCTIONALITY ARE UNRELIABLE AND IRRELEVANT BECAUSE HE INCORRECTLY EQUATES HAVING A FUNCTION WITH LEGAL "FUNCTIONALITY."

The Court should strike and disregard the functionality opinions of Mr. Ball. Not only is Mr. Ball not qualified to opine as to the functional aspects of a breast pump design as noted above, but the standard he applies is contrary to law. Under 35 U.S.C. § 171, design patents may be granted only for ornamental designs for useful articles: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor ... ." Consequently, "the fact that the article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof." *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997). The Federal Circuit has thus warned that "[t]he function of the article itself must not be confused with 'functionality' of the design of the article." *Id.* Because that is exactly what Mr. Ball does in his opinions regarding "functionality," all such opinions should be excluded.

Legal functionality is based on whether the appearance is mandated by the function. "An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear*, 988 F.2d at 1123. As the Federal Circuit explained in *Hupp*, "it is relevant whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes." 122 F.3d 1460. Also, in *High Point Design*, the Federal Circuit overturned a district court's conclusion of invalidity based on "functionality" that amounted to a determination that the "design's 'primary features' can perform functions." 730 F.3d at 1316. The court explained that this was an "incorrect legal standard," directing the trial court to consult precedents such as *L.A. Gear* and *Hupp*. *See id*.

Mr. Ball commits the same error that the Federal Circuit reversed in *High Point Design* by equating a purported function of the base with the patent term of art "functionality." Indeed, in describing Mr. Ball's opinions and statements on the matter, Medela makes no effort to describe the round, unadorned, suction base as the only possible design with no possible other alternatives. Instead, it musters only the unsupported claim that Plaintiff's design is "optimal." *See* Mem. in Supp. of MSJ at 27 (ECF No. 113) (citing DSMF ¶ 51) (further citations omitted). In fact, Mr. Ball conceded that there were numerous alternate designs for suction cups, necessarily showing that the one used in the patent in suit was not "necessary" but instead a design choice. *See* Dec. 7, 2021, Tr. of Proceedings at 498; *see also* Ball Dep. at 131:7 to 134:11. The USPTO's supplemental examination report confirming the claim's validity agreed with Think Green on this very point. (Exhibit B.) His insistence that this nevertheless meets the "functionality" standard set forth by the Federal Circuit renders his opinions on this issue unreliable.

Mr. Ball's opinions regarding the functionality of the "three-part architecture" of the patented Haakaa product and associated trade dress suffers the same problems. Specifically, Mr. Ball's opinions that all manual breast pumps that include a breast shield, a collection receptacle, and a suction cup base are "functional" because such an arrangement performs a function ignores alternatives to such designs. Indeed, Mr. Ball was confronted with such an alternative design in his deposition. *See* Ball Dep. at 67:11 to 69:21. Perhaps more importantly, alternative breast pump designs exist that do not contain a suction cup base – specifically, the "Gen 1" version of the Haakaa product. To opine that a manual breast pump's appearance is "dictated by" the "function" of being a breast pump ignores and is contrary to well-known facts. Any opinion based on such reasoning is faulty and contrary to controlling law.

## CONCLUSION

This Court should exclude and disregard certain of the opinions expressed by Mr. Ball in his declaration in support of Medela's summary judgment motion. He lacks the experience and thus the expertise to opine on the perceptions of an "ordinary purchaser" of the particular products at issue here. His prior design experience – focused on small kitchen appliances and computers – does not provide a sufficient basis for expertise. Further, Mr. Ball does not apply any methodology and rejects applying consumer psychology at all for determining how an "ordinary observer" of these particular products would perceive any differences between the design patent at issue and the infringing Medela products. Absent any methodology or explanation as to how such a methodology applies in this case, Think Green as well as this Court are unable to test such a methodology for reliability. Finally, Mr. Ball's opinions regarding legal functionality are contrary to law and thus are unreliable. As noted above, Mr. Ball confuses having a function with legal functionality and fails to account for numerous alterative design possibilities for performing the same functions. Nor does he have any qualification to testify to what is "best" or "optimal" for breast pumps. Since these opinions do not meet the standards of Rule 702 or *Daubert*, they should be excluded and disregarded.

Dated: June 30, 2022

Respectfully submitted,

*/s/ Michael La Porte*

**Dunlap Bennett & Ludwig PLLC**
Robert P. Greenspoon
Michael R. La Porte
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
T: 312-551-9500
F: 312-551-9501

Thomas Dunlap (*pro hac vice*)
211 Church St. SE
Leesburg, VA 20175
T: 703-777-3656
F: 703-777-7319

Sarah Kessler (*pro hac vice*)
1870 The Exchange SE #200
Atlanta, GA 30339
T: 404-692-5953
F: 703-777-3656

**Attorneys for Plaintiff,**
**Think Green Limited d/b/a Haakaa**