UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THINK GREEN LIMITED, | |
| Plaintiff, | No. 21 C 5445 |
| v. | Judge Thomas M. Durkin |
| MEDELA AG and MEDELA LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Think Green and Medela both sell manual breast pumps. Think Green alleges that Medela's manual breast pump infringes Think Green's design patent and trade dress rights. Medela has moved for summary judgment on Think Green's design patent claim and trade dress claim, and Think Green filed a cross motion on an issue relevant to the trade dress claim. The Court grants summary judgment to Medela on the design patent claim, but denies without prejudice the cross motions for summary judgment on the trade dress claim.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d

887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 2021 WL 4486445, at *1 (7th Cir. Oct. 1, 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Think Green owns U.S. Patent No. D808,006. *See* R. 1-1. The '006 Patent includes the following depictions of the patented design:



R. 162 at 4 (¶ 10). Think Green alleges that Medela's manual breast pump, which Medela calls the "Silicone Breast Milk Collector," violates the '006 Patent. Here is a side-by-side comparison of the two:



Fig. 9

D'006 figure 9

Medela Silicone Breast Milk Collector

R. 162 at 12 (¶ 17).

In addition to the '006 Patent, Think Green claims trade dress rights in the "three-part shield-collector-base configuration, wherein the collector is bulbous yet fits underneath the outer diameter of the shield and contains an ornamental rib in its top part, while the base flares out from the bottom of the collector bulb to meet the surface upon which the whole unit rests." R. 1 ¶ 18; R. 162 at 17 (¶ 23).

This case began with the Court granting Think Green a temporary restraining order on October 18, 2021. The parties then conducted significant discovery in

advance of a hearing held on December 6 and 7, 2021. After the hearing, the Court denied Think Green's motion for a preliminary injunction, finding that Think Green had not shown a likelihood of success on the merits of its design patent claim "because the patent is for an opaque object whereas Medela's product is transparent." R. 96 at 259 (528:7-9).

Medela then sought leave to file a summary judgment motion without further discovery, primarily on the basis that its transparent or translucent product did not infringe Think Green's opaque design. The Court granted Medela leave to file the motion, but also permitted Think Green to seek additional discovery tailored to the issues in Medela's motion before filing a response brief. Think Green also filed a cross motion for summary judgment and motions to strike Medela's experts.

Medela's motion makes the following arguments: (1) its product does not infringe the '006 Patent; (2) Think Green has not established "secondary meaning" necessary to prove its trade dress claim; and (3) Think Green has not shown the likelihood of confusion necessary to prove its trade dress claim. Think Green's cross motion argues that it has demonstrated a likelihood of confusion on the trade dress claim. The Court first explains why summary judgment is granted to Medela on Think Green's design patent claim, and then why summary judgment for either party on the trade dress claim is premature.

## Analysis

### I.  Design Patent

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; [and] (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

### A.  Claim Construction

Regarding the first step, the "scope of a claimed design encompasses its visual appearance as a whole, and in particular the visual impression it creates." *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002). "Unlike an invention in a utility patent, a patented ornamental design has no use other than its visual appearance," and therefore "its scope is limited to what is shown in the application drawings." *In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) ("design patents typically are claimed as shown in drawings"). Because "a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration," the Federal Circuit does not require district courts to attempt "to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Egyptian Goddess*, 543 F.3d at 679. Claim construction is a question of law for the court. *See In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004).

In constructing design patent claims, courts often look for guidance from the Manual of Patent Examining Procedure ("MPEP"), published by the U.S. Patent and Trademark Office. *See*, *e.g.*, *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1341 (Fed. Cir. 2019). The MPEP provides that all design patent applications "must include either a drawing or a photograph of the claimed design." MPEP § 1503.02.

For drawings, the MPEP includes a variety of standards related to the use of different types of drawn lines to indicate different shapes and materials. *See* MPEP § 1503.02(II), (III), (IV). For instance, a "broken line" is used to show "the environment in which the design is associated," that "is not part of the claimed design." *Id.* § 1503.02(III). Additionally, forms of "surface shading" lines are used to indicate "character and contour," including "to distinguish between any open and solid areas of the article." *Id.* § 1503.02(II). Other forms of "surface shading" include "[o]blique line shading . . . used to show transparent, translucent and highly polished or reflective surfaces." *Id.* In addition to oblique lines for transparent materials, the "Design Patent Application Guide," another publication of the U.S. Patent and Trademark Office, provides other forms of line shading symbols to indicate various materials and colors.[1]

---

[1] Here are the different forms of surface shading (including for "transparent material") provided in the "Design Patent Application Guide":

Conversely, courts have held that "when a patent *fails* to specify a limitation," in other words, when it is blank and does not include surface shading, "the patentee is entitled to the broadest reasonable construction." *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3071477, at *5 (N.D. Cal. July 27, 2012) (citing *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1363 (Fed. Cir. 2004)). For instance, according to the Sixth Circuit, a blank surface without oblique lines could claim a transparent, translucent,



*See* https://www.uspto.gov/patents/basics/types-patent-applications/design-patent-application-guide#drawings.

7

or opaque surface, or both. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 601 F.2d 904, 912-13 (6th Cir. 1979). In other words, an inventor intending to claim a generically opaque surface, and not any particular material type, would use a line drawing with a blank surface, free of anything but contour lines, thereby claiming both an opaque and transparent surface.

These broad interpretation standards for drawings, however, cannot provide guidance for interpretation of design patents based on photographs. This is for the self-evident reason that photographs, being depictions of actual, existing objects, must disclose *some* specific surface material. Obviously, no photographable, three-dimensional object can exist without a surface with certain specific characteristics. Drawings permit a choice to use "surface shading" or not, remaining agnostic as to surface characteristics and material. By contrast, depiction of these characteristics is inherent in a photograph of an actual, existing object.

In addition to the ability to depict agnostic surfaces, the claimed scope of drawings can be broadened by using broken lines to remove certain aspects of the object from the claimed design. This is not true of photographs, for which every aspect of the photographed object is part of the design. Nothing in the photograph can be removed from the claimed design, so the claim is inherently narrower and more specific. *See* MPEP § 1503.02 ("Photographs submitted in lieu of ink drawings . . . must not disclose environmental structure but must be limited to the design claimed for the article.").

For these reasons, whereas drawings can be agnostic about certain aspects of the object and can depict the object's environment without it being part of the design, photographs strictly limit the design claim to the specific incarnation depicted in the photograph. Indeed, the MPEP provides that due to the "high probability of inconsistencies between corresponding elements on the drawings compared with the photographs," the combination of photographs and drawings in one application is prohibited. *See* MPEP § 1503.02(V).

In this case, however, the '006 Patent includes neither a line drawing nor a photograph. Instead, Think Green's patent is based on what appears to be a computer-generated image of a three-dimensional object. On the spectrum of claim specificity, this computer-generated image falls somewhere between line drawings and photographs. The computer-generated image lacks the real-life detail of a photograph but can depict an object's attributes in a photographic fashion without the need for the symbolism of line drawings.

Applying these principles here, the Court finds that Think Green's patent must be interpreted to claim an opaque object to the exclusion of translucent or transparent objects. The Court finds that, like a photograph, the computer-generated image constitutes a choice of surface material. For example, the dark shadow on the interior of the container depicted in the view from above of the '006 Patent clearly depicts an opaque object. A translucent or transparent object would not cast such a dark shadow on its interior.

9

Think Green's primary argument to the contrary boils down to the observation that the image in the '006 Patent does not include "surface shading" line symbols indicating transparent or other materials, and so Think Green contends that it is agnostic as to surface material and characteristics. But "surface shading" line symbols are only necessary in line drawings—a computer-generated image can simply depict the intended contours and material in a photographic manner. Because the '006 Patent is based on a computer-generated image instead of a line drawing, it can (and does) indicate surface contours and characteristics without the "surface shading" line symbols Think Green references. Without the need for or possibility of drawn line shading, the '006 Patent computer-generated image depicts contour with shading that imitates real-life photographic shading.

Think Green's contention that the surface of the '006 Patent image is analogous to a blank surface in a line drawing is simply contrary to the Court's perception of the '006 Patent image. Think Green deliberately chose a computer-generated image that *appears* opaque. Such a deliberate choice of image with an unmistakable appearance of opacity must be understood to manifest an intention to claim an opaque object. In the more familiar context of line drawings, inventors choose to use oblique lines to convey transparent surfaces because the oblique lines make the drawing *appear* transparent. Think Green made a similarly deliberate choice here, based on the appearance of the image, to claim an opaque object.

Lastly, although not directly relevant to the analysis here, the Court notes that it is not alone in its opinion that the '006 Patent claims an opaque object. After the

preliminary injunction hearing in this case, Think Green applied for reexamination of the '006 Patent to confirm is patentability. The examiner's opinion was that the '006 Patent claims an opaque object. *See* R. 148-2 at 8 (p. 4) ("When there is no indication of transparency, it is presumed that the finish is not intended as transparent. . . .This examiner . . . interprets the appearance as opaque since there is nothing to suggest otherwise.").

Moreover, the inventor of the '006 Patent, Think Green's owner Shuting Zhang, filed a least one design patent prior to the '006 Patent related to manual breast pumps that included a line drawing claiming transparent material. *See* R. 162 at 10-11 (¶ 16). Zhang's knowledge of the technique for claiming a transparent object with a line drawing, and more particularly her choice to use a computer-generated image for the '006 Patent instead, indicates that her intent was to claim an opaque object. Both the examiner's opinion, and Zhang's choice of image, support the reasonableness of the Court's finding that the '006 Patent claims an opaque object.

## B. Comparison

Having constructed the '006 Patent to claim only an opaque object, the Court must next determine whether an ordinary observer would find Medela's translucent product to be "substantially the same" as Think Green's opaque design. *See Egyptian Goddess*, 543 F.3d at 670 ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."). "In

determining whether two designs are 'substantially the same,' courts focus on the "overall impression given by the claimed design, rather than particular ornamental details or minutiae." *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, 2012 WL 3031150, at *8 (S.D.N.Y. July 25, 2012) (citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)). "What is controlling is the appearance of the design as a whole in comparison to the accused product." *Contessa Food,* 282 F.3d at 1376. "There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar[.]" *OddzOn Prods. Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Whether an accused object is "substantially similar" to a patented design is a question a district court can answer as a matter of law at summary judgment based the court's comparison of the patent and accused product. *See*, *e.g.*, *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341-46 (Fed. Cir. 2020); *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 897 (Fed. Cir. 2020).

Even if Medela's product were exactly the same as Think Green's design in all other aspects, the Court finds that an ordinary observer would not find the translucent object to be substantially the same as the opaque object. Opaque and translucent objects are categorically different such that they are "plainly dissimilar" and could not be confused by an ordinary observer. *See Wallace v. Ideavillage Prod. Corp.*, 640 F. App'x 970, 972 (Fed. Cir. 2016). Indeed, whether an object is opaque or translucent is one of the most obvious and prominent characteristics of any object.

12

Think Green submits the reports of two experts stating that despite the opacity of Medela's product an ordinary observer would still find it to be substantially similar to Think Green's design. However, "expert testimony cannot create a material issue of fact, where a visual comparison reveals that the alleged infringing design is not substantially similar to the patented design." *Dyson, Inc. v. SharkNinja Operating LLC*, 2018 WL 1906105, at *8 (N.D. Ill. Mar. 29, 2018) (citing cases); *see also* R. 172 at 7 n.6 (citing cases).

Further, the methods employed by Think Green's experts ignore the opacity of Think Green's design, making them unresponsive to the Court's analysis. Timothy Fletcher's analysis is based on the contention that "people are able to see things by distinguishing between the object (figure) and the background (ground)." R. 155 at 127 (p. 68, ¶ 12). Based on this principle, he believes that proper comparison for determining whether Medela's product is substantially similar to Think Green's design is to compare the silhouette of each object, because they highlight each object's figure against a background. These images are taken from his report (Think Green on the left, Medela on the right):



R. 155 at 129 (p. 70). Fletcher contends that

> the brain would initially recognize the above figure-ground
> comparisons as the first act of object recognition, and that
> the figure-ground images above are substantially the same,
> it is my opinion that any differences between the '006
> Patent design and the Medela SBMC design are minor or
> trivial. For these reasons, . . . and taking into account that
> it is minor or trivial the ordinary observer would be
> deceived causing them to purchase one believing it to be
> the other.

*Id.* at 130 (p. 71, ¶ 122).

Similarly, Charles Mauro conducted a survey using an image of the Medela

product that hid its opacity (again, Think Green on the left, Medela on the right):



R. 173 at 16 (p. 15); R. 155 at 268. While the image of the Medela product continues to appear shiny in comparison to the matte appearance of the Think Green design, Mauro's image no longer appears translucent. Instead, it appears to be a nearly opaque dark grey color. The results of any survey using these images do not test the Court's finding that an ordinary observer would find that Medela's translucent product is not substantially similar to Think Green's opaque design.

An inventor can only get patent protection for what it claims. And of course, the inventor has a choice as to what she claims. In this case, Think Green claims an opaque object, whereas Medela's product is transparent or translucent. For this reason, the Court finds that Medela's product does not infringe the '006 patent and grants summary judgment to Medela on that claim.

*    *    *    *

If, contrary to the Court's finding, the translucency of Medela's product were insufficient for an ordinary observer to distinguish it from Think Green's design, the Court would have been required to further construe Think Green's patent claim with regard to its functionality. The functional aspects of the design are excluded from the claim, such that Medela (or any other competitor) can copy them without infringing Think Green's patent. The parties did not brief this issue with respect to Think Green's design patent claim. But the obvious and categorical difference between an opaque and translucent object means that the failure to address functionality does not prevent the Court from granting summary judgment on the design patent claim.

## II. Trade Dress

The parties' failure to fully address functionality cannot be ignored with respect to Think Green's trade dress claim. Like design patent rights, claimed trade dress rights are not protectable if the claimed trade dress is functional. *See Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). According to the Supreme Court, a product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). "Even if a product feature does not satisfy that definition, it can still be functional if it is a 'competitive necessity,' that is, if its exclusive use 'would put competitors at a significant non-reputation-related disadvantage.'" *Arlington Specialties, Inc. v. Urb. Aid, Inc.*, 847 F.3d 415, 419 (7th Cir. 2017) (quoting *TrafFix Devices*, 532 U.S. at 32-33). "Functionality is a factual

question, but the bar for functionality is so low that it can often be decided as a matter of law[.]" *Arlington Specialties,* 847 F.3d at 419-20.

The briefs touch on functionality, but neither party moved for summary judgment on the issue. Instead, Medela's motion is based on its contention that Think Green cannot demonstrate "secondary meaning" and "likelihood of confusion," which are both elements of a trade dress claim. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) ("In order to prevail on a claim of trade dress infringement, a plaintiff must show that 1) its trade dress is either inherently distinctive or has acquired secondary meaning, and 2) that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products."). However, even if the plaintiff successfully establishes these two elements, "the defendant can prevail if the defendant demonstrates that the plaintiff's trade dress is functional." *Id.* Thus, the Court sees functionality as one of the threshold issues.

Medela briefly argued in its opening brief that the "shield-bulb-base" arrangement is functional. Think Green responded with more significant argument. But neither party sought summary judgment on the issue. And the discovery plan Think Green submitted, which the Court approved, did not mention functionality. *See* R. 116. For these reasons, the Court is concerned that the record has not been properly developed regarding this threshold issue.

Perhaps the parties believe discovery on functionality is already complete. But the parties' briefs do not address whether that is the case. And the Court is reluctant

to reach issues of secondary meaning and likelihood of confusion if the trade dress rights are not protectable in the first place.

This is especially significant for the Court, because as the record currently stands (including evidence from the two-day preliminary injunction hearing), and in light of the limited briefing on this issue, the Court's current impression is that the relevant aspects of Think Green's alleged trade dress are functional and not protectable. A useful element of a product that is a "competitive necessity" is functional and excluded from protectable trade dress. *See Arlington Specialties*, 847 F.3d at 419. The core of Think Green's claimed trade dress is the shield-bulb-base arrangement. This arrangement appears to be the best way to design a manual breast pump of this kind, making it a "competitive necessity" that meets the legal definition of "functional." Think Green's primary argument against the functionality of the shield-bulb-base arrangement seems to be that manual breast pumps can also be produced with levers instead of bulbs. But this example is unpersuasive bordering on irrelevant because manual breast pumps *that use bulbs* are the products at issue. (The Elvie Curve product, which does not actually create significant suction, is completely irrelevant.) Manual pumps that use bulbs are not the same as manual breast pumps that use levers. For purposes of trade dress, these two kinds of manual pumps are as different from each other, as manual breast pumps as a whole are from electric breast pumps. This is likely why numerous other manufacturers offer a product with the shield-bulb-base configuration. *See* R. 113 at 3-4. For these reasons, the Court is inclined to find that the significant aspects of Think Green's claimed

18

trade dress are functional and not protected. But such a finding is premature considering the Court's perception of the state of the record and briefing.

Furthermore, the issue of functionality is not merely relevant as an element of a trade dress claim in and of itself. The Court must determine which aspects of the claimed design are functional in order to determine secondary meaning. "Secondary meaning is acquired when in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). But only "product features" that are not functional can be considered in an analysis of secondary meaning. So functionality must be addressed first.

The issue of how functionality is related to secondary meaning is important and complicated in this case because Think Green has three versions of its product known as: (1) Generation 1; (2) Generation 2, Version 1; and (3) Generation 2, Version 2. As the Court understands it, Think Green claims a trade dress violation of its Generation 2, Version 2 product. The shape of Generation 2, Version 1 appears to be based on the '006 Patent, and its shape is very similar to Medela's product. But Generation 2, Version 2, is visually distinct from Medela's, as can be seen here (with Think Green's Generation 2, Version 2 on the left, and Medela on the right):



Think Green          Medela

There are many differences, including: Think Green's shield includes a ridge that Medela's lacks; Think Green's bulb and base are wider; Think Green's product is stamped with graphics; and Medela's product includes a loop to attach a lanyard. This comparison shows that Think Green's and Medela's trade dresses of their current products are very different, except for the shield-bulb-base arrangement. But if the shield-bulb-base arrangement is functional, it cannot be part of the secondary meaning analysis. Again, it is a threshold issue the parties do not fully address.

The helpfulness of Think Green's expert on secondary meaning is also called into question by this issue. Her survey of secondary meaning asked consumers to compare Think Green's product to manual breast pumps with a lever. If the shield-bulb-base arrangement is functional and not protected trade-dress, then the difference between that design and a lever-based manual pump is not the proper

comparison. Similarly, the analysis of likelihood of confusion is determined by the aspects of the products that are protected. So functionality must be determined first.

For these reasons, the Court finds that summary judgment on any aspect of the trade dress claims (and other related claims) is premature. The parties must first fully address the issue of functionality. Which for the reasons discussed, the Court believes will likely be dispositive of Think Green's remaining claims.

## Conclusion

Therefore, Medela's motion for summary judgment [112] is granted in part and denied in part, in that the Court grants summary judgment to Medela on Think Green's design patent claim and denies summary judgment without prejudice on Think Green's trade dress claim. Think Green's motion for partial summary judgment on its trade dress claim [163] is also denied without prejudice. Additionally, Think Green's motions to strike Medela's experts [147] [148] are denied without prejudice. The motion to compel [128] is denied as moot. The status set for October 21, 2022 stands. The parties should meet and confer prior to the hearing and decide how they would like to proceed, including whether a referral to the magistrate judge for a settlement conference would be appropriate.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 7, 2022

21