IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Think Green Limited d/b/a Haakaa,<br><br>Plaintiff,<br>v.<br><br>Medela AG and Medela LLC,<br><br>Defendants. | **CASE No. 1:21-CV-05445**<br><br>**Hon. Georgia N. Alexakis**<br><br>**Mag. Judge Heather K. McShain** |

**THINK GREEN'S MEMORANDUM OF LAW IN SUPPORT OF *DAUBERT* MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF CARSTEN FALTUM AND TO PRECLUDE TESTIMONY AT TRIAL**

This Court should strike portions[1] of the expert report and declaration Carsten Faltum as noted below. Think Green brings this motion to assist the Court in evaluating a pending summary judgment motion.

In support of its theories on functionality, Medela went back to its former Chief Technology Officer responsible for launching the infringing product and engaged him to write an "independent" expert report. Mr. Faltum's report says numerous things that Medela contends will bolster its position. But that report does nothing to explain or support those statements. By and large, the report is loaded with pseudo-science to give it the veneer of expertise, without any linkage of any "scientific" conclusions to marketplace factors the fact finder must evaluate when addressing the functionality question. Beneath its pseudo-science veneer, however, is nothing more than Mr. Faltum's says so ("*ipse dixit*" in *Daubert* parlance) that fails to satisfy the requirements of Rule 702.

[1] There are many parts of Mr. Faltum's report that are problematic from a *Daubert* standpoint, but Think Green only addresses those portions that Medela relies on in its recently-filed motion for summary judgment.

## BACKGROUND

Carsten Faltum is the former Chief Technology Officer for Medela. He was involved in (indeed, led) the project that adapted the third-party "off-the-shelf"[2] ("RoRoBaby") product to market under the Medela name. Mr. Faltum no longer works for Medela. Earlier in the case, Medela submitted a declaration from Mr. Faltum in opposition to Think Green's motion for a preliminary injunction.[3] After that, he was deposed[4] and testified at that hearing. In connection with recent dispositive-motion filings, he provided an export report.[5] He was deposed a second time.[6] Medela then adapted his report and provided a declaration[7] in support of its own motion for summary judgment.

Faltum holds a Bachelor of Science in Production Engineering, and a Master of Science in Chemical Engineering, "with a focus on biotechnology and technical chemistry."[8] He has been involved in developing products for ostomy and incontinence. At Medela he was involved in the development of the Freestyle electric pump and the Flex Shield ® pump flanges for those pumps. Although he is not a designer, does not have a degree in design, has not designed a silicone one-piece breast pump, and does not claim to be an design expert,[9] his report holds him forth as an expert based on claimed "significant insight and experience" with "body worn" and "body-close"

---

[2] Faltum Decl. at (Oct. 26, 2021) (Attached as Exhibit A)
[3] *Id.*
[4] Defense Exhibit 102 to Medela's Opposition to Motion for Preliminary Injunction.
[5] Expert Report of Carsten Faltum (March 26, 2024) ("Faltum Report") (Attached as Exhibit B).
[6] Deposition of Carsten Faltum (May 14, 2024) (cited as "Faltum Dep. II") (Attached as Exhibit C).
[7] Declaration of Carsten Faltum (Sep. 6, 2024) (Ex. 11 to Medela's LR 56.1 Statement) ("Faltum Decl."). *All* references and cites to the "Faltum Declaration" are to this second declaration, unless otherwise noted. (Attached as Exhibit F)
[8] Faltum Report at 3
[9] Faltum Dep. II at 15:12 to 20; *id.* at 15:21 to 16:19 (reconfirming from prior deposition that he is not a design expert); *id.* at 21:20 to 21 (I'm not an aesthetic designer. I'm a technical person."). Despite offering critiques about Think Green's survey experts in his own report, Mr. Faltum also conceded that he is not a survey expert. *Id.* at 22:3 to 7.

devices and specifically the extent to which "the body and function of the device . . . dictate physical form and share of these devices."[10] Mr. Faltum has never been qualified as an expert by any court in the United States or anywhere in the world for that matter.

## ARGUMENT

The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*[11] Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert*, Courts should interpret Rule 702 "with a flexible standard" having two over-arching requirements: (1) "[t]he expert testimony must be 'ground[ed] in the methods and procedures of science,'" and (2) the expert testimony "must 'assist the trier of fact to understand or determine a fact in issue.'"[12]

This Court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid."[13] In other words, "whether the testimony has been subjected to the scientific method, ruling out any subjective belief or unsupported speculation."[14] *Daubert* sets forth a nonexclusive list of factors the court may consider in determining whether an expert's testimony is

---

[10] Faltum Report at 3; *compare* Faltum Dep. II at 15:20 (claiming he is a "technical expert").
[11] 509 U.S. 579 (1993). *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673-74 (7th Cir. 2017).
[12] *Krik*, 870 F.3d at 674, citing *Daubert*, 509 U.S. at 590-91.
[13] *Daubert*, 509 U.S. at 592-93.
[14] *Chapman v. Maytag*, 297 F.3d 682, 687 (7th Cir. 2002); *see also Greenwich Indus. v. Specialized Seating,* No 02 C 5000, 2003 U.S. Dist. Lexis 8369 (N.D. Ill. May 15, 2003).

reliable: (1) whether the theory or technique can be and has been tested; (2) has been subject to peer review and publication; (3) has a known or potential rate of error; and (4) is generally accepted.[15] The Court must apply the *Daubert* factors even in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion merely on experience or training.[16]

If a witness is an expert based solely on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[17] Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost.[18] Where the proffered expert offers nothing more than a bottom line conclusion, he does not assist the trier of fact.[19] A methodology is unreliable if it is based on criteria that the expert makes up or is otherwise just *ipse dixit*.[20] At the end of the day, in all cases, the "court must ensure that it is dealing with an expert, not just a hired gun."[21]

---

[15] *Daubert*, 509 U.S. at 593-94.
[16] *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999).
[17] Advisory Committee Notes to *Fed. R. Evid. 702*.
[18] *Chapman, 297 F.3d at 688*; *see also Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2017 U.S. Dist. LEXIS 239373, *29 (N.D. Ill. March 31, 2017) (rejecting expert opinion and observing that the expert "may have just eye-balled them according to his gut feeling . . .. That's not good enough. An expert cannot just say 'this looks reasonable to me;' he must explain his methodology in a manner that permits others to understand and evaluate it.")
[19] *Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 318-19 (7th Cir. 1996); *see also Greenwich Indus.,* 2003 U.S. Dist. Lexis 8369 *13.
[20] *Hannah's Boutique, Inc. v. Surdej*, No. 13-cv-2564, 2015 U.S. Dist. LEXIS 79501, *10 (N.D. Ill. June 19, 2015) (cleaned up) ("If the opinion is "connected to existing data 'only by the ipse dixit of the expert,'" then it "is properly excluded under Rule 702."); *see also Thomas & Betts Corp. v. Richards Mfg. Co.,* Civ. No. 01-4677, 2006 U.S. Dist. LEXIS 16636, *41 (D.N.J. Apr. 3, 2006), *overruled on other grounds by Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 761-62 (3d Cir. 2009).; *see also Paine v. Johnson*, No. 06 C 3173, 2010 U.S. Dist. LEXIS 16974, *12 ) (N.D. Ill. Feb. 25, 2010) ("Expert opinions reached merely by virtue of the expert's general expertise or intuition are not admissible.") *Zenith Elecs v. WH-TV Broadcasting Corp.,* 395 F.3d 416, 418 (7th Cir. 2005).
[21] *Tyus v. Urban Search Management,* 102 F.3d 256, 263 (7th Cir. 1997).

### 1. The Court Should Exclude Fusion Testing Results, Materials, and Related Portions of Faltum's Report and Testimony Because Medela Refused to Provide Underlying Testing Data Precluding Meaningful Cross Examination.

When expert opinions are offered based on the review and analysis of data, that data must be provided to the opposing party as a prerequisite to admitting expert evidence. The failure to provide such data will lead to exclusion.[22] Portions of Mr. Faltum's expert opinions stem from his analysis of tests performed by a third-party engineering company, Fusion, which performed "tests" on actual breast pumps. One test was an actual experiment on actual physical products. Another was a theoretical computer simulation. Medela refused to provide underlying data for both.[23]

In one experiment, Fusion put a stopper in the breast shield opening of various pumps. In the stopper, it put a tube, which it put into a beaker of water (*i.e.*, not breast milk).[24] Fusion had a robot compress the pumps and suck water out of the beaker. Based on how much water was sucked out, Fusion calculated a contrived "efficiency" value. Specifically, it took the ratio of water sucked out to the "volume" of the various pumps. Neither the Fusion Report nor Mr. Faltum's Report include the underlying values to calculate this "efficiency" number.

The omission is material and harmful. Although various breast pump products have advertised volumes, there is no industry standard way to report volume. Fusion does not indicate its own measured or calculated volume (what it called "container volumetric capacity.")[25] Fusion

---

[22] *E.g., Fujifilm N. Am. Corp. v. Big Value, Inc.*, 16-cv-5677 (BMC), 2018 U.S. Dist. LEXIS 150204, *14 (E.D.N.Y. Sep. 4, 2018).

[23] *See* May 10, 2024, email from Michael Weiner to Michael La Porte (Attached as Exhibit D) (refusing to provide the underlying data requested).

[24] Breast Milk (especially colostrum) does not have the same viscosity as water, which difference greatly impacts flow. *See, e.g.,* LumenLearning, *Viscosity and Laminar Flow; Poiseuille's Law* (available at https://courses.lumenlearning.com/suny-physics/chapter/12-4-viscosity-and-laminar-flow-poiseuilles-law/) (last visited Oct. 11, 2024).

[25] Fusion Report at 3 (included as part of Exhibit B).

only included a picture showing a line drawn somewhere near where the shield attaches to the collector, suggesting where it might have measured or calculated volume.

Fusion reported its results to a claimed tenth of one percent, which Medela touts as "statistically significant,"[26] but only showed the results on a graph. According to Fusion, the "4oz" Haakaa Gen. 2 was nearly identical to the "Medela" which is a 3.4 oz / 100ml product. But without the underlying data, it was impossible to perform a complete cross examination of Mr. Faltum on "his" expert opinions on sucking "efficiency."[27] Even assuming this metric had any relevance (it does not, as shown below).

Fusion's testing in the second regard should also be excluded. In the second experiment, Fusion did not use actual physical products but instead created a computer model.[28] The details of this simulation are disused in greater detail below. For purposes here, only the results and Mr. Faltum's analysis of them are most important. In sum, the simulation purported to show the "linearity" of a force curve applied to a hypothetical series of products based on their various shapes. Fusion presented the results of the simulation in two graphs without any accompanying data. Mr. Faltum "eyeballed" the curves and declared the one associated with Medela's product "more linear."[29] It should go without saying that it is impossible to assess the accuracy of this "eyeballed" claim without the underlying data. Mr. Faltum acknowledged that there are

---

[26] Medela LR 56.1 SMF (hereafter DSMF) ¶ 19 (ECF No. 287) (PageID #:9805)

[27] "Water-from-a-beaker sucking efficiency" isn't a relevant consideration as noted *infra.*

[28] Fusion Report at 6-9. The simulations should be excluded on separate grounds for reasons discussed *infra.*

[29] *E.g.*, Faltum Dep. II at 170:20 to 171:12. Faltum's linearity criteria is further problematic and would cause needless confusion if permitted at trial for two additional reasons: (1) even he agrees based on his own made-up criteria, that linearity is only "important" on one end of the curve – where, he is not sure, (*id.* at 199:12 to 200:4) ("the important part is at the point in time where it would start to . . . .when exactly that point in time is, you cannot say") but the curve is backwards because he measured compression, not rebound force; and (2) the computer robot fully compressed all the model pumps, whereas breastfeeding women often do not as full compression would yield a painfully-high vacuum force.

mathematical ways to measure linearity,[30] and which one cannot do when deprived of the underlying data. He conceded that he did not do those calculations.[31] Because Medela refused to provide the underlying data, it prevented Think Green from effective cross examination. Mr. Faltum's opinions and any testimony related to the Fusion Report should be excluded.

### 2. Faltum's Claims that Silicone Breast Pumps Need "Linear" or "Substantially Constant" Vacuum Suction Is Made Up *Ipse Dixit*.

In arguing that the Medela silicone breast pump must be shaped as it is, Mr. Faltum claims:[32]

> 49. In a breast milk collector such as the Medela product, the ideal is a substantially constant vacuum at a sufficient negative pressure to maintain uninterrupted contact with the breast as it fills and a low enough vacuum level that does not cause discomfort or pain to the nipple or breast. Further, the collector should be able to contain the extracted breast milk, without being so heavy or bulky that it loses suction and falls off the breast prematurely.

Nowhere, however, does Mr. Faltum explain in his report what this supposed "ideal" is based on or where this standard came from. Mr. Faltum never points to any advertising statements by any maker touting a superior "vacuum constancy" as a performance metric a mother should care about. In his deposition, he claimed that Medela had "internal knowledge" of various vacuum pressure values,[33] but did not explain what that internal knowledge was. Medela did not produce any documents related to such internal knowledge and Mr. Faltum did not point to any of the "Materials Reviewed" section of his report.

---

[30] Faltum Dep. II at 164:10 to 165:1.
[31] Faltum Dep. II at 165:2 to 3.
[32] (highlighting added). In his report, which preceded this declaration, Mr. Faltum claims [t]he ideal vacuum . . . is *constant or linear*." Faltum Report at 17 (emphasis added). Beyond the problems noted above, Mr. Faltum's opinions are further flawed and unsupported because he nowhere explains what he means by "constant or linear." Further, he appears to conflate "constant" and "linear," which are not the same thing. Linear forces can, and frequently are increasing "linearly," or decreasing "linearly," and thus not constant at all.
[33] *E.g.*, Faltum Dep. II at 93:25 to 94:8.

Mr. Faltum's opinion that a silicone breast pump must exhibit a constant or linear vacuum force is *ipse dixit* that this Court should exclude. All related testimony and parts of his report that depend on this made-up opinion should also be excluded.

### 3. Faltum's Method for Measuring "Linearity" or Constancy of Vacuum Suction is Flawed.

Even if this Court were to look past these fatal problems with Mr. Faltum's made up "linearity/constancy" criteria, there are a plethora of other fatal issues. First, the linearity of vacuum pressure that Mr. Faltum says is important is the vacuum pressure between the shield and the breast. But he did not measure this.[34] For instance, he did not measure the *rebound* force of a compressed breast pump—the force that would create the vacuum. Instead, he had someone calculate the *theoretical* force that would need to be applied to a product's container to *compress* it to enable it to make a vacuum.[35] Mr. Faltum conceded that the rebound force does not directly or necessarily correlate with the compression force.[36] This renders such testing fatally unreliable.

Further complicating and undermining validity of this computer modeling is the fact that the products modeled were not actual products and did not approximate real products. Instead, Fusion took existing products and modeled them not with the breast shields they actually have, but with a Medela breast shield swapped in.[37] Neither Fusion nor Mr. Faltum explained how these "Frankensteined" products resembled actual products.[38] Furthermore, the testing assumed that the silicone thickness for all hypothetical products was 3mm regardless of what the actual thickness

---

[34] Recall that the "linearity" "testing" that Fusion did was not with actual products, but instead were a computer simulation, which is not in and of itself problematic, but as noted below the way it was executed was.

[35] Faltum Dep. II at 146:6 to 11.

[36] *Id.* at 147:22 to 148:19 ("I'm not saying that it is an accurate and 100 percent representation of -- of the real world").

[37] *Id.* at 150:6 to 151:18.

[38] *Id.* at 161:8 to 162:12 (admitting that modelling conducted could not show who actual products would behave).

was.[39] Fusion also made no effort to control for the "shore hardness" of silicone among the various products, which directly correlates to the rebound force that a given product will exhibit.[40]

### 4. Mr. Faltum's "Efficiency Criteria" is Irrelevant.

Even if the Court were to permit Mr. Faltum's efficiency opinions and overlook the withholding of data and other underlying issues, the efficiency of sucking water through a hose stuck into a beaker (regardless of the vacuum pressure) is irrelevant. The ratio of sucked water to the volume of the device is not a fact that makes any issue in this case more or less probable.

The goal of a silicone manual breast pump is not to vacuum breast milk most "efficiently." That is not a thing. Silicone manual breast pumps do not operate as electric pumps do. They stimulate and collect "letdown."[41] Medela and Mr. Faltum have claimed elsewhere and repeatedly that the amount of pressure needed is that which is *sufficient* to stimulate the initial flow of "letdown" milk from a mother's breast that is not currently pumping.[42] The idea of "efficiently" sucking water from a beaker would not help the trier of fact in any way on that issue. The results of these tests presuppose that more and harder vacuum pressure is better, when Medela admissions (and women's complaints about painfully-high vacuum pressure) show this is not true.

### 5. Mr. Faltum's Opinions that Certain Shapes of Collectors are Optimal Because of the Way they are Held in Women's Hands is Impermissible *Ipse Dixit*.

Mr. Faltum makes a variety of claims about the supposed importance of an optimal size and shape of collection bulb and placement of a "shape retaining ring," so that breastfeeding mothers can supposedly have a "secure" feeling in holding it, can avoid the risk of it slipping through her fingers like a "bar of soap," and have a "tactile" reference for supposedly where to

---

[39] *See* Faltum Dep. II at 175:10 to 19 (conceding that the actual thickness of silicone *could* have been modeled but was not and could have impacted the results).
[40] *Id.* at 239:17 to 240:5 (varying shore hardness would vary silicone springback and vacuum force).
[41] *See* Medela SMF ¶ 16.
[42] *Id.*

squeeze the device to produce a vacuum and where to locate the center without looking at it. All of these supposedly necessary criteria (only satisfied by copying the Think Green Haakaa trade dress) are simply made up, post hoc justifications. They are not science. They are not based on Mr. Faltum's experience and often this claim is directly contradicted by objective evidence and internal Medela documents that Mr. Faltum seems to have avoided reviewing.

In his report, Mr. Faltum claims that:[43]

> - When holding the device, it is important that it fit within the entire hand. If it must be held such that some fingers are not wrapped around the device, it will be—and just as importantly will feel—less secure. The same is true if the device is larger at the bottom of the hand than the top, as can be appreciated by the following images:



Mr. Faltum offers no support for the assertion about the feeling of security – either the need for it or the supposed absence of it in various shaped devices. He went so far in his deposition to claim that holding a device approximated by the shape on the right would risk sliding through the hand like a wet bar of soap.[44] This is not science. It is nonsense.

Mr. Faltum's "analysis" in this regard, borders on the absurd, because it ignores the fact that regardless of the shapes of the hypothetical containers (Faltum's black-lined shapes), actual silicone manual breast pumps have a neck that then opens to a breast shield, making it impossible for the container to slip out of the hand through the bottom. A more accurate "model" of Mr.

[43] Faltum Report at 18; *see also* Faltum Decl. ¶ 23.
[44] Faltum Dep. II at 204:6 to 205:1.

Faltum's claims about the "feeling" of security would be as shown below where red triangles have been added to represent the breast shield, like the products at right:





The idea that the breast pump shown at right (the Matyz product)[45] would slip through a woman's hand like a bar of wet soap because of its shape is absurd. This is impermissible *ipse dixit*.

Mr. Faltum makes similarly baseless claims elsewhere such as:

> products having a wider bottom . . . posing some practical difficulties in squeezing the collector body closed for use, because the mother shifts her hand downward, with the result that one of more of her fingers fail to engage the device.[46]

There is no basis for this in Mr. Faltum's report. Mr. Faltum also conceded in his deposition that he has never seen a woman hold such a pump in the way he describes.[47] This is yet another criterion that Mr. Faltum has just made up and does not explain as based on his experience.

There are several other instances of these made-up criterion that should be stricken:

- A nursing mother "needs a tactile indicator on the device to ensure that it is properly oriented and that her hand is properly positioned to compress it."[48]

---

[45] Fletcher Report Decl. at 21.
[46] Faltum Decl. ¶ 44; *see also* id. ¶ 68.
[47] *See* Faltum Dep. II at 244:8 to 245:18 (cannot say if he's ever actually seen anyone handle the Motha Sucka or Lansinoh product claims to have expertise about); *see also* Medlea, *Silicone Breast Milk Collector User Survey* at 24 (MEDELA00009867) (noting that squeezability from the sides and the middle of the collector bulb would provide a "special *design point*" for Medela as other manufacturers recommend "squeez[ing] on the bottom.") (Attached as Exhibit E); *see also* Medela, *How to Use Your Silicone Breast Milk Collector*, (available at https://www.youtube.com/watch?v=oCyQwgFCd88) (last visited Sep. 28, 2024) ((demonstrating the use of a Medela SBMC and rarely, if ever, holding the product in the way that Mr. Faltum describes).
[48] Faltum Decl. ¶ 22; *see also id.* ¶ 71.

This is also made up *ipse dixit*. There is nowhere in the report that shows on what this is based. He concedes this is not based on feedback or interviews from actual women.[49] It is also flatly contradicted by Medela evidence that he appears to have avoided reviewing.[50]

- [Alternatives identified by Mr. Fletcher . . . position the rib in locations where] . . . where it fails to serve as a tactile indicator of where the device is to be compressed.[51]

This is also made-up *ipse dixit*. There is nowhere in the report that shows on what this is based. This is also logically absurd. This Court can take judicial notice of the fact that most typewriter and computer keyboards have "tactile indicators" on the "F" and "J" keys, which help users locate where F and J are, and *also* help orient the user's hand for all other letters and characters on the keyboard.[52] Mr. Faltum also concedes he is not aware of any complaint of any user of the non-ribbed products that the absence of a ring has the drawbacks he describes.[53] His expertise is supposedly based on his experience. He must do more than just offer his say so.[54]

---

[49] Faltum Dep, II. at 249:15 to 253:13; see also 242:12 to 245:18 (conceding among other things that this feeling is based on how he says he feels when he holds it). Mr. Faltum's opinions here would also not helpful to the jury, as he concedes that on this point he is no more "expert" than anyone else. *See id.* at 243:19 ("you can test it for yourself").
[50] *See, e.g.*, Medela, How to Use Your Silicone Breast Milk Collector, (available at https://www.youtube.com/watch?v=oCyQwgFCd88) (last visited Sep. 28, 2024); Hapa Family, *Why You NEED a HAAKAA Pump (& How To Use One)!* (available at https://www.youtube.com/watch?v=9gIP_e-wM6E) (last visited Oct. 9, 2024) (demonstrating the use of a Haakaa and rarely, if ever, holding the product in the way that Mr. Faltum describes); *see also* Medela, Silicone Breast Milk Collector User Survey at 24 (MEDELA00009867) showing a user gripping the Medela SBMC in the fingertips, not the palm of the hand.
[51] Faltum Decl. ¶ 73.
[52] *See also Steiner*, Frederich, Here's Why the F and J Keys on Keyboards Have Bumps on Them, PCWorld (available at https://www.pcworld.com/article/2337532/this-is-why-the-f-and-j-keys-on-keyboards-are-usually-raised.html) (last visited Sep. 30, 2024).
[53] Faltum Dep. II at 251:24 to 253:13.
[54] Advisory Committee Notes to Federal Rule of Evidence 702.

### 6. Mr. Faltum's Opinions that Preventing the Use of Think Green's Trade Dress Would cause "Significant Non-reputation-related disadvantages" Is Baseless *Ipse Dixit.*

In various parts of his report and declaration, Mr. Faltum chimes in[55] on one of the ultimate issues in Medela's functionality defense – namely, whether preventing the use of the claimed trade dress would place competitors at a "significant non-reputation-related disadvantage."[56] While Courts do not automatically exclude opinions on ultimate issues of fact, experts may not render opinions as to ultimate issues of law.[57] Here Mr. Faltum does just that.

One of the tests for the defense of functionality is noted above. After acknowledging that this is an ultimate legal standard,[58] Mr. Faltum purports to opine in several parts of his report that the inability to use the Think Green trade dress would put Medela at a significant non-reputation related disadvantage.[59] That Mr. Faltum was opining on the ultimate legal issue and not on any fact issues is apparent from his deposition testimony. When asked, Mr. Faltum struggled and failed to explain what he viewed as "significant" as a factual matter.[60] When specifically asked about the cost aspect of this, he again could not answer as a factual matter, hedged, and then disclaimed expertise even to determine the cost answer.[61]

On the non-cost side of things, Mr. Faltum did not fare better. When asked to explain what is "significant," he stated that it would be something "noticeable and important."[62] But as noted

---

[55] *See* Medela LR 56.1 SMF ¶¶ 19, 32, 37, and 38 (citing Faltum Report).
[56] *TrafFix Devices v. Mktg Displays*, 532 U.S. 23, 27-28 (2001) (citations omitted).
[57] *Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-cv-01849-HSG, 2017 U.S. Dist. LEXIS 142315, at *21 (N.D. Cal. Sep. 1, 2017) (prohibiting expert from testifying on the ultimate issue of whether a trade dress element is protectable or is *de jure* functional).
[58] Faltum Report at 5 (citing *TrafFix*)
[59] *Id.* at 16 (under the heading "My opinions"); *see also id.* at 14, 40, and 48; *see also* Faltum Dep. II at 44:3 to 13.
[60] Faltum Dep. II at 44:22 to 12.
[61] *Id.* at 45:13 to 19 (repeatedly saying "it depends" and then defending his inability to answer *twice* saying that he is a "technical expert")
[62] *Id.* at 50:4 to 15.

above, the criteria that he deemed noticeable and important are just made-up criteria,[63] which are neither grounded in facts or any expertise, and are frequently contradicted by Medela's own evidence. His convenient we-had-to-copy-to-compete story is obvious backfill to concoct a faux legal justification for the wrongs against Think Green that he personally orchestrated. Many products that do not copy Think Green perform just fine, and succeed wildly in the marketplace.

### 7. Mr. Faltum's Opinions Regarding All Other Silicone Manual Breast Pumps Should be Excluded in Their Entirety As Baseless Speculation and Theorizing.

Finally, all of Mr. Faltum's opinions regarding the performance of pumps other than Haakaa, Medela, should be excluded because they are not based on anything other than his own speculation and theorizing. As a witness proffered as an expert based on experience, as Mr. Faltum is, it is incumbent on him and on Medela to show "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[64] He has not done this.

At least for all products that he has not tested in his report (and only for testing on these specific aspects), Mr. Faltum again and again conceded that he:

- has no hands-on experience with these products whatsoever;[65]
- has only passing (if any) knowledge of the consumer feedback on those products;[66]
- has not spoken to any person working for any of these other companies to learn about these products and design choices;[67]
- has not listed any surveys, comments, or feedback from mothers regarding competing products as part of his report;[68]

---

[63] *See supra* 7-12; *see also* Faltum Dep. II. at 67:4 to 11 ("What other companies find important or not important I don't know.")
[64] Advisory Committee Notes to Rule 702.
[65] *E.g.*, Faltum Dep. II. at 218:10 to 218:14 ("I did not test the [Haakaa] petal");
[66] *E.g., id.* at 251:24 to 253:13.
[67] *Id.* at 58:1 to 6.
[68] Faltum Report at 54. Mr. Faltum does include a handful of Amazon customer comments regarding Lansinoh and its vacuum pressure. The Lansinoh product is one that he has tested and is expressly excluded from this portion of Think Green's motion.

- has not reviewed any surveys of breastfeeding mothers reflecting their views on the important features of manual breast pumps.[69]

Such lapses are stunning, when considering that the existence of acceptable marketplace alternatives to the asserted trade dress is strong evidence that a product is legally "functional."[70] Because Mr. Faltum does not base his opinions on actual experience with the performance of products that he has not tested and instead relies entirely on his own theories about how they might work, this Court should exclude all of his opinions on untested products and even of those tested, and should exclude opinions as to their performance beyond those specific tests.

## CONCLUSION

Medela has tried to bolster its arguments with the biased statements of its former CTO. Mr. Faltum's made up criteria paint a masterpiece of pseudo-science, unsupported by peer-review, evidence, or explanation. In cases where witnesses properly provide evidence based on experience, they are required to show what experience and what facts support the opinions. Time and again Mr. Faltum fails to do this and on this basis his opinions ought to be excluded. At minimum, since Medela refused to provide data involved in some of the experiments that Mr. Faltum had a third-party company perform, any and all opinions related to those experiments should be excluded.

Dated: October 11, 2024

Respectfully submitted,

*/s/ Michael R. La Porte*

Robert P. Greenspoon
Michael R. La Porte
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
T: 312-551-9500
F: 312-551-9501
rgreenspoon@dbllawyers.com

[69] Faltum Dep. II at 69:5 to 24; *see also id.* at 207:14 to 25, 211:23 to 212:5, 249:15 to 250:1

[70] *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41(C.C.P.A. 1982).

mlaporte@dbllawyers.com

Thomas Dunlap (*pro hac vice*)
211 Church St. SE
Leesburg, VA 20175
T: 703-777-3656
F: 703-777-7319
tdunlap@dbllawyers.com

**Attorneys for Plaintiff,**
**Think Green Limited d/b/a Haakaa**